## HARDMAN v. BERTRAND et al.
### No. 4616.

Court of Civil Appeals of Texas.
Eighth District.

Feb. 2, 1949.

Rehearing Denied Feb. 23, 1949.

James Little, Big Spring, John J. Watts, Odessa, for appellant.

Mays, Perkins & Sheridan, Sweetwater, R. T. Bailey, Dallas, Henry Russell, Pecos, for appellees.

McGILL, Justice.

This is an appeal from a judgment of the District Court of Crane County, rendered on an instructed verdict sustaining the respective pleas of privilege of appellees. Appellant was plaintiff in the trial court and appellees were defendants. Plaintiff filed this suit in the District Court of Crane County, alleging that he sustained serious personal injuries while assisting in "squeezing" an oil well in Crane County, which were proximately caused by the negligence of defendants who were the owners of the well. Recovery was sought against the defendants J. C. Bertrand and A. A. Bradford individually, and against the partnership firm of Bertrand & Bradford, the name under which they did business. All defendants filed pleas of privilege in conformity with Rule 86, Texas Rules of Civil Procedure. Bradford alleged that at all relevant times his residence was in Nolan County, and prayed that the suit be transferred to that county. Bertrand alleged that his residence was in Taylor County, and prayed that the suit be transferred to Taylor County, or in the alternative to Nolan County. The partnership alleged the respective residences of the partners, and prayed that the suit be transferred to Nolan County. Each of the pleas was controverted by plaintiff. Trial was to a jury, but at the close of the evidence offered by plaintiff (defendants having offered no evidence) the court instructed the jury to return a verdict for defendants, which they did, and on such verdict the judgment appealed from was rendered.

To maintain venue in Crane County appellant relies on that portion of Subdivi-

sion 9, Art. 1995, Vernon's Ann.Civ.St., which provides that

"A suit based upon * * * a trespass may be brought in the county where such * * * trespass was committed".

It has been extremely difficult for this writer, being entirely unfamiliar with oil field operations and with the technical terms employed by oilfield workers, to glean from this record a comprehensive picture of the facts in this case and to determine just what was done in connection with "squeezing" the well in question before appellant was injured. Appellant has given a résumé of the facts in his brief, and appellees state in their brief that for the purpose of this appeal there is no material dispute in the record, but they do specifically direct our attention to certain portions of it. We shall accept appellant's version of the facts with appellees' emphasis on certain portions of the record as a sufficient statement for the purpose of this appeal. We quote from appellant's brief:

"The purpose of a 'squeeze job' on a wild oil well is to cut off or diminish some of the gas so the well can properly produce oil. The operation is performed by first 'killing' the well. And in this instance the well was killed by the use of salt water which, of course, is heavier than oil. The next step is to fill a portion of the hole with cement, which was done in this case. Then the plug of cement is drilled out and the well is put on production. In this instance, Darrell W. Smith, plaintiff's employer, was the contractor engaged to do the necessary drilling operations, etc., in connection with the squeeze job. The defendants had their superintendent, Earl King, on hand to look after their interest and to advise Savage (driller for Darrell W. Smith) as to how they wanted the operations carried out.

"After the plug was drilled out, King insisted that the salt water be displaced with oil before the tubing was anchored and set in its permanent position. Savage, the driller in charge for Smith and an experienced man in such operations, testified that the usual custom was to pick the tubing up eight joints and anchor it in that position before displacing the water with oil. However, in compliance with the orders of King, Savage and his crew displaced the water with oil before attempting to pick up and anchor, or set the tubing.

"When they had picked up the tubing about sixteen feet, the well started flowing through the casing. This would not have happened, according to Savage, if they had picked up the tubing and anchored it before the salt water was displaced with the live oil, since the act of filling the well with oil created pockets of gas and since the salt water (heavier than oil) would have held the well in.

"When the well started flowing it became necessary to shut it off and so they attached the mandrel to the tubing and ran it into the hole, which effectively shut the well off.

"Mr. King thought that the mandrel had bumped on the casing and could have been damaged as it went in the well and he wanted the tubing (with mandrel attached) picked up so he could inspect the mandrel for damages. Mr. Savage did not want to do this and thought that the well should be circulated and let set awhile before picking up the tubing and mandrel. He told Mr. King that if the tubing and the mandrel were picked up that the well would go all over hell, but Mr. King reiterated his order to pick it up and check it. Savage complied and when the mandrel and tubing were picked up a matter of inches, the gas flared and zoomed out of the well and came into contact with fire in some way, possibly from a burning light bulb under the derrick floor or from the motor exhaust, and the plaintiff, who was on the floor assisting in the operations, sustained his serious injuries, since his clothes were ignited by the fire and he was badly burned."

Appellees construe this statement as showing that Darrell W. Smith was an independent contractor of defendants, that Russell Savage was Darrell W. Smith's driller in charge, and the plaintiff was a tool pusher under Savage; that Earl King was the defendants' superintendent and gave his orders to Russell Savage. Savage testified that all of the equipment at the well belonged to Darrell W. Smith. Earl King gave no orders of any kind to plaintiff; both the plaintiff and Russell Savage testified that he gave the instructions to (a)

displace the salt water with oil and (b) pick up the tubing and mandrel to Russell Savage.

The specific allegations of negligence in plaintiff's petition which were incorporated in each of the controverting pleas are too lengthy to reproduce in full. In substance they are; (a) that it was the duty of defendants to furnish plaintiff a reasonably safe place in which to work and that defendant breached that duty through their superintendent, Earl King, when King ordered that the salt water be displaced from the well and the hole be filled with live oil, which was not the customary manner in West Texas and in the oilfields in which to kill a wild oil well, and which created a highly dangerous condition; (b) that the defendants were guilty of negligence because the said King negligently ordered the employees of the said Darrell W. Smith, including plaintiff, after said employees had succeeded in shutting the well in by setting the mandrel back in the well, to pick up the tubing in order to check the amount of damage done to the rubber.

Appellant has presented four points: First, that the evidence conclusively shows that King ordered and caused the salt water to be displaced with oil prior to the pulling back and anchoring the tubing; that such act constituted active negligence proximately causing appellant's injuries and hence was a trespass within the meaning of the Statute; Second, that fact issues were raised as to these questions; Third, that the evidence conclusively established that King ordered Smith's employees to pick up the tubing and mandrel after they had been put back in the well to shut off its flow and that such order constituted active negligence and a trespass under the Statute; and Fourth, that fact issues were raised as to these questions.

■ Appellees object to our consideration of the first and second points because under his pleading as set out in (a) above, appellant, plaintiff in the trial court, proceeded in that court on the theory that "under the customary manner in West Texas and in the oil fields" it was active negligence to displace the salt water with live oil, regardless of whether this was done prior to pulling back and anchoring the tubing or thereafter; whereas in this court appellant attempts to proceed on the theory that to displace the salt water with live oil was negligence and active negligence only where this was done prior to pulling back and anchoring the tubing. The objection is not sustained. The witness Savage testified without objection to effect that it was customary to pull the tubing back to where it belongs (eight joints in this instance) and anchor it before displacing the salt water with live oil, and that the accident would not have happened if they had done this; that this was the way work was customarily done on squeeze jobs, but that it was not done in this manner on this job because he had orders from King "to run the tubing to the bottom, circulate the water off and pick it back up eight joints". Although the theory of active negligence advanced here by appellant was not specifically raised by his pleadings in the trial court, it was raised by this testimony. It is thought that under a liberal construction of plaintiff's pleading the negligence here relied on is raised. There was no objection to the evidence relative thereto.

■ Appellant in his controverting pleas sedulously avoided alleging that defendants failed to furnish him a safe place to work. He adroitly alleged that they breached their duty to do so, and alleged specifically the two orders of King to show such breach of duty. In other words, plaintiff alleged in substance, not that defendants failed to furnish him a safe place to work, but that by their affirmative action they rendered the place which they did furnish him unsafe. However, the form of his pleading does not control the question of venue as showing active or passive negligence. Metzger Dairies v. Wharton, Tex.Civ.App., 113 S.W.2d 675.

It is apparent that the controversy on this appeal narrows down to one question, i. e., did either of the orders given by King constitute active negligence or were they "acts wilfully or negligently committed, and not those which result from a mere omission to do a duty." Ricker, Lee & Co., v. Shoemaker, 81 Tex. 22, 16 S.W. 645; Meredith v. McClendon, 130 Tex. 527, 111

**366**

S.W.2d 1062, and authorities there cited; Jackson v. McClendon, 143 Tex. 577, 187 S.W.2d 374.

Appellant relies on three authorities: Texas Hardwood Co. et al. v. Moore, Tex. Civ.App., 235 S.W. 630, 631, in which it was held that among other acts an order directing the injured party to push a car was an act which raised issues of "wrongful acts willfully or negligently committed"; Dillingham v. Cavett, Tex.Civ.App., 91 S.W. 2d 868, holding that a direction to the injured boy to push blocks of ice into a dangerous "Scoring machine" raised an issue of active negligence, and Page v. Schlortt et al., Tex.Civ.App., 71 S.W.2d 886, holding that ordering men to work on a scaffold insufficiently constructed to bear their weight raised such issue. Appellees insist that Dillingham v. Cavett and Page v. Schlortt were conclusively overruled by the Supreme Court in Meredith v. McClendon, supra. We do not so construe that opinion. It is true that in James v. Meredith, 101 S.W.2d 866, the Austin Court of Civil Appeals cited Page v. Schlortt and Dillingham v. Cavett, as well as Goodrum v. Hobbs, Tex.Civ.App., 60 S.W.2d 298, in support of its holding, which was reversed in Meredith v. McClendon. However, in Meredith v. McClendon the court quoted the rule enunciated in Ricker et al. v. Shoemaker, supra, and in Connor v. Saunders, 81 Tex. 633, 17 S.W. 236, and then said [130 Tex. 527, 111 S.W.2d 1065]:

"The rule announced in the above decisions has been followed and applied in many cases, some of which are cited below: Austin v. Cameron, 83 Tex. 351, 18 S.W. 437; Brooks v. Hornbeck, Tex.Civ.App., 274 S.W. 162; McCrary v. Coates, Tex. Civ.App., 38 S.W.2d 393; Page v. Schlortt, Tex.Civ.App., 71 S.W.2d 886; Goodrum v. Hobbs, Tex.Civ.App., 60 S.W.2d 298; 43 Tex.Jur. p. 735, § 22, and cases cited."

To our minds this language does not overrule but expressly approves Page v. Schlortt. This view is fortified by the statement in Jackson v. McClendon, supra, that Brooks v. Hornbeck, Tex.Civ.App., 274 S.W. 162, which appears in the above quotation, was cited with approval in Meredith v. McClendon.

Apart from these authorities it seems inconceivable to us that an order to do anything can be other than affirmative action if it is any action at all. Certainly by giving these orders King was acting, and not failing to act. By ordering Savage to displace the salt water and replace it with live oil, and to pick up the mandrel, King was in effect doing these things himself. Qui facit per alium facit per se. Whether under all the circumstances of this case this action of King was negligence was a question of fact for determination by the jury. If negligence, then as a matter of law such negligence was active and constitutes a trespass under the Statute. The court erred in directing a verdict for defendants and in rendering judgment on such verdict.

The judgment is reversed and the cause remanded.